**Alban E. WOOLLEY, Jr., Elmer G. Nettles and Marquette Casualty Company,**

v.

**MISS LOU TOWING SERVICE, Inc.**
No. 2843.

United States District Court
E. D. Louisiana,
New Orleans Division.
June 18, 1957.

Dodd, Hirsch & Barker, New Orleans, La., for plaintiffs.

Lemle & Kelleher, New Orleans, La., for defendant.

CHRISTENBERRY, Chief Judge.

The Court, having heard the evidence and the arguments of proctors, and having taken time to consider the matter, hereby makes the following findings of fact and conclusions of law:

### Findings of Fact

#### I.

Libellants herein are Alban E. Woolley, Jr. and Elmer G. Nettles, residents of Baton Rouge, and Marquette Casualty Company, a foreign insurance corporation.

#### II.

Respondent is Miss Lou Towing Service, Inc., an Alabama corporation, at all times hereinafter being the owner and operator of the towboat Miss Lou.

#### III.

On March 22, 1955, at dusk, libellants Woolley and Nettles, together with one Landry, were proceeding west in the Intracoastal Canal near Intracoastal City, riding in a small bottom punt or scow, approximately 14 feet long and 4 feet wide. This punt or scow had square ends, and was slightly tapered so that each end was approximately 3 feet wide.

The boat in question was owned by Shelton Morgan of Intracoastal City, and was loaned by him to libellants. He is not in the business of renting small boats, and this was the only punt or scow owned by him. It was used as a utility boat around his landing for the purpose of carrying a pump to pump out other vessels, painting or performing minor utility work around his landing.

Libellants wanted to take some pictures of the area, and were out all day in the boat which was powered by their own 7½ horsepower outboard motor operated by Landry.

#### IV.

The towboat Miss Lou is a large modern diesel powered towboat which at the time in question was proceeding easterly in the Intracoastal Canal pushing a tow of seven light barges made up in two strings, four on the starboard side and three on the port side. There are numerous slow signs in the Intracoastal Canal in the area where the Miss Lou met the small boat, and on reaching those signs, the Master of the Miss Lou cut his speed to half ahead. As he was so proceeding, he noticed the small boat coming towards him and further cut his speed to slow ahead. The heaviest of the three occupants was seated in the bow of the boat, which had approximately 4 inches of freeboard at that time. Although libellants claim that a bow wave about 4 feet high was being created by the Miss Lou and her tow, I find this statement to be a gross exaggeration, and find that the Miss Lou was coming ahead at a reasonable speed under the circumstances and was not throwing an excessive bow wave.

#### V.

Libellants had photographic equipment in the punt, some of which was their personal property, and the remainder was owned by the State of Louisiana and insured against loss or damage by Marquette Casualty Company.

#### VI.

When proceeding approximately 20 feet from the north shore of the Intracoastal Canal, the operator of the boat in which the libellants were riding apparently became apprehensive, and either

slowed his speed or cut his motor. In either event, the effect of his maneuver was to throw the punt or scow down by the head so that she took water and sank.

## VII.

As a result of the sinking of the punt, all the photographic equipment was lost, and the personal effects and the outboard motor of libellants Woolley and Nettles were lost or damaged. Marquette Casualty Company, as insurer of the photographic equipment owned by the State of Louisiana, paid the latter the sum of $546.76, for which it obtained full subrogation rights. Woolley and Nettles were thrown into the water and had to endure the cold weather while wet for several hours as they returned to the landing.

## VIII.

The sole and proximate cause of the occurrence was the unseaworthiness of the punt or scow which was not being used for a purpose for which it was constructed. The action of libellants in going out in a small outboard motor boat with a square bow and only approximately 4 inches of freeboard charges them with negligence, and precludes any recovery herein. Moreover, the action of the operator of the outboard motor in suddenly cutting his speed or slowing his motor, when approaching the waves created by the tug and her tow, contributed to the inherent unseaworthiness of the small boat and also constituted negligence, for none of which can the Miss Lou or her owners be held responsible.

## IX.

The Miss Lou and her owners and operators were free from negligence.

### Conclusions of Law

#### I.

This Court has jurisdiction of this claim by reason of the fact that it is a maritime tort.

#### II.

The proximate cause of the casualty was the inherent unseaworthiness of the small boat in which the libellants were riding, contributed to by the neglect or fault of the operator of the small boat, for none of which is the Tug Miss Lou or her owners liable.

There will be a decree for respondent.